In the
# UNITED STATES COURT OF APPEALS
for the Seventh Circuit

# No. 23-2557

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**v.**

**LARRY JONES,**

**Defendant-Appellant.**

On Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 20 CR 309-1 — Virginia M. Kendall, *Chief Judge*.

# BRIEF OF THE UNITED STATES

MORRIS PASQUAL
Acting United States Attorney
 for the Northern District of Illinois
219 South Dearborn Street, 5th Floor
Chicago, Illinois 60604
(312) 353-5300

BRIAN J. KERWIN
Assistant United States Attorney
Chief of Appeals, Criminal Division

MICHAEL MAIONE
Assistant United States Attorney

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii

JURISDICTIONAL STATEMENT ...................................................... 1

ISSUE PRESENTED FOR REVIEW ................................................. 1

STATEMENT OF THE CASE ............................................................. 2

SUMMARY OF ARGUMENT .......................................................... 20

ARGUMENT ...................................................................................... 23

    I.    The District Court Correctly Considered Defendant's Entire Scheme To Distribute Narcotics With His Co-Conspirator As Relevant Conduct, An Issue Defendant Waived By Expressly Agreeing To It In His Plea Agreement and Not Contesting It At Sentencing. ........................................................................ 23

    II.   This Court Should Not Second-Guess The District Court's Credibility Determinations. .............................................. 38

    III.  The District Court Committed No Procedural Error In Permitting Witness Testimony Regarding Murders That Defendant And His Drug Conspiracy Allegedly Caused. ................. 41

CONCLUSION .................................................................................. 43

# TABLE OF AUTHORITIES

## CASES

*United States v. Allen*, 529 F.3d 390 (7th Cir. 2008) ................................ 24, 29

*United States v. Baines*, 777 F.3d 959 (7th Cir. 2015) .................................... 33

*United States v. Brasher*, 105 F.4th 1002 (7th Cir. 2024) .................. 34, 35, 36

*United States v. Brodie*, 507 F.3d 527 (7th Cir. 2007) .................................... 25

*United States v. Burgess*, 22 F.4th 680 (7th Cir. 2022) .................................. 27

*United States v. Butler*, 58 F.4th 364 (7th Cir. 2023) .................................... 41

*United States v. Collins*, 230 F. App'x 578 (7th Cir. 2007) ....................... 29, 30

*United States v. Crowder*, 36 F.3d 691 (7th Cir. 1994) .................................. 41

*United States v. Dennis*, 119 F.4th 1103 (7th Cir. 2024) ................................ 38

*United States v. Draheim*, 958 F.3d 651 (7th Cir. 2020) ................................ 33

*United States v. Eddy*, 8 F.3d 577 (7th Cir. 1993) ......................................... 39

*United States v. Frias*, 641 F. App'x 574 (7th Cir. 2016) ......................... 33, 34

*United States v. Fuentes*, 858 F.3d 1119 (7th Cir. 2017) ........................... 24, 30

*United States v. Gonzalez-Rangel*, 63 F. App'x 909 (7th Cir. 2003) .......... 40, 41

*United States v. Grigsby*, 692 F.3d 778 .......................................................... 38

*United States v. Harper*, 766 F.3d 741 (7th Cir. 2014) .................................. 23

*United States v. Hathaway*, 882 F.3d 638 (7th Cir. 2018) ......................... 25, 29

*United States v. Jaimes-Jaimes*, 406 F.3d 845 (7th Cir. 2005) ....................... 29

*United States v. Johnson*, 437 F.3d 665 (7th Cir. 2006) .................................. 39

*United States v. Lard*, 327 F.3d 551 (7th Cir. 2003) ......................................... 23

*United States v. Lawrence*, 854 F.3d 462 (8th Cir. 2017) ................................ 39

*United States v. Minhas*, 850 F.3d 873 (7th Cir. 2017) ................................... 38

*United States v. Moreno-Padilla*, 602 F.3d 802 (7th Cir. 2010) ...................... 27

*United States v. Nobles*, 69 F.3d 172 (7th Cir. 1995) ...................................... 40

*United States v. O'Brien*, 238 F.3d 822 (7th Cir. 2001) .................................. 23

*United States v. Ortiz*, 431 F.3d 1035 (7th Cir. 2005) .................................... 34

*United States v. Poulin*, 745 F.3d 796 (7th Cir. 2014) ................................... 41

*United States v. Purham*, 754 F.3d 411 (7th Cir. 2014) ..................... 34, 36, 37

*United States v. Ranjel*, 872 F.3d 815 (7th Cir. 2017) .................................... 23

*United States v. Robinson*, 964 F.3d 632 (7th Cir. 2020) ............................... 30

*United States v. Salem*, 597 F.3d 877 (7th Cir. 2010) ................................... 25

*United States v. Singleton*, 548 F.3d 589 (7th Cir. 2008) .............................. 35

*United States v. Speed*, 656 F.3d 714 (7th Cir. 2011) ............................... 39, 40

*United States v. Statham*, 581 F.3d 548 (7th Cir. 2009) ............................... 38

*United States v. Thomas*, No. 22-1377, 2023 WL 5447273 (7th Cir. Aug. 24, 2023) ................................................................................................................. 29

*United States v. Wallace*, 991 F.3d 810 (7th Cir. 2021) ................................. 23

*United States v. Watkins*, 197 F. App'x 497 (7th Cir. 2006) ..................... 25, 29

*United States v. Zehm*, 217 F.3d 506 (7th Cir. 2000) .......................... 32, 33, 34

## STATUTES

18 U.S.C. § 1956(a)(3)(A) ................................................................................ 1, 5

18 U.S.C. § 3231 ................................................................................................ 1

18 U.S.C. § 3553(a) ............................................................................ 17, 19, 22

18 U.S.C. § 3553(a)(1) ..................................................................................... 42

18 U.S.C. § 3661 .......................................................................................... 22, 42

18 U.S.C. § 3742(a)(2) ....................................................................................... 1

18 USC 1962(d) ................................................................................................ 12

21 U.S.C. § 841(a)(1) ...................................................................................... 1, 4

21 U.S.C. § 846 ............................................................................................... 1, 4

28 U.S.C. § 1291 ................................................................................................ 1

## RULES

Fed. R. Crim. P. 32(i)(3)(A) ........................................................................... 27

Federal Rules of Appellate Procedure 32(a)(5) ........................................... 44

Federal Rules of Appellate Procedure 32(a)(7)(B) ..................................... 44

U.S.S.G. § 1B1.3 .............................................................................................. 33

U.S.S.G. § 1B1.3(a)(2) ............................................................................... 32, 35

U.S.S.G. § 3E1.1 .............................................................................................. 28

## JURISDICTIONAL STATEMENT

Defendant-appellant's jurisdictional statement is not complete and correct. On June 24, 2020, defendant was charged by indictment with one count of conspiracy to distribute 100 grams or more of a mixture and substance containing a detectable amount of heroin after been convicted of a serious violent felony, in violation of 21 U.S.C. § 846; seven counts of knowingly distributing a controlled substance, in violation of 21 U.S.C. § 841(a)(1); and one count of knowingly conducting and attempting to conduct a financial transaction affecting interstate commerce which involved property represented by a confidential source to be proceeds of specific unlawful activity, in violation of 18 U.S.C. § 1956(a)(3)(A). App. 1-12. On January 19, 2023, defendant pled guilty to the drug trafficking conspiracy count and the money laundering count. App. 13. On July 20, 2023, defendant was sentenced by the district court to 96 months' imprisonment. R. 155, 188. The district court entered its final judgment on July 25, 2023. R. 206. Defendant filed a timely notice of appeal on August 4, 2023. R. 210.

The district court had jurisdiction pursuant to 18 U.S.C. § 3231. This Court has jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(2).

## ISSUE PRESENTED FOR REVIEW

Whether the district court erred by including as relevant conduct quantities of narcotics that defendant trafficked prior to the beginning of the

charged conspiracy to which he pled guilty, where all of his narcotics trafficking activities involved the same co-conspirators and occurred in the Chicago neighborhood that their gang controlled.

## STATEMENT OF THE CASE

### *Offense Conduct*

Between approximately August 2018 and September 2019, defendant conspired with co-defendants Jamar Spencer and Marsha Fountain, and others, to knowingly and intentionally possess with intent to distribute and distribute heroin. PSR ¶ 10; App. 16.[1] During this time, defendant directed Fountain to store wholesale quantities of heroin, transport heroin to defendant and his associates, collect narcotics proceeds from Spencer and others who sold heroin supplied by defendant, and provide defendant with information she received from street level sellers and customers about the quality of the heroin that defendant supplied. PSR ¶ 11; App. 16.

For example, on or about August 6, 2018, defendant placed a call to Fountain and asked her to bring him approximately 25 grams of heroin for defendant to sell to a customer who, unbeknownst to defendant and Fountain,

---

[1] Citations to the original electronic record on appeal are designated as "R." followed by the district court document number. Citations to defendant's brief and appendix are designated as "Br." and "App.," respectively. Citations to the Presentence Investigation Report are designated as "PSR." Citations to portions of the two-day sentencing hearing transcript that were not included in defendant's appendix are designated as "7/19/23 Tr." or "7/20/23 Tr.", as appropriate. Page or paragraph numbers are included where appropriate.

was a confidential source ("CS") cooperating with law enforcement. App. 16. Later that day, Fountain met with defendant and the CS in a vehicle parked on the 400 block of South Cicero Avenue in Chicago. *Id.* at 16-17. During that meeting, defendant cautioned Fountain about the presence of law enforcement in the area and asked Fountain if she brought "25 or 50" grams of heroin to the meeting. *Id.* at 17. Fountain responded that she brought "25," which defendant understood to mean 25 grams of heroin. *Id.* Fountain then handed a knotted plastic bag containing approximately 25 grams of heroin to defendant, and defendant then gave the heroin to the CS in exchange for $3,750. *Id.* As discussed further below, $1,875 of the $3,750 paid by the CS to defendant was repayment for approximately 25 grams of heroin that defendant "fronted" to the CS on or about July 23, 2018. *Id.* On the same day, August 6, 2018, defendant conducted a financial transaction in interstate commerce involving the narcotics transaction money provided by the CS. App. 18-19.

Additionally, on October 24, 2018, defendant directed Spencer to travel to the 3800 block of West Lake Street in Chicago to meet with the CS. App. 17. During that meeting, Spencer gave the CS approximately 24.8 grams of heroin and received approximately $1,880 in narcotics proceeds from the CS, which Spencer then gave to defendant. *Id.*

In addition to the August 6 and October 24, 2018 transactions described above, defendant sold approximately 124.3 grams of heroin to the CS over the

span of five transactions that occurred between August 2018 and September 2019. App. 17-18. Specifically, on August 15, 2018, defendant distributed approximately 24.8 grams of heroin to the CS; on September 19, 2018, defendant distributed approximately 25 grams of heroin to the CS; on December 18, 2018, defendant distributed approximately 24.9 grams of heroin to the CS; on February 20, 2019, defendant distributed approximately 25 grams of heroin to the CS; and on September 3, 2019, defendant distributed approximately 24.5 grams of heroin to the CS. *Id.* Defendant received $9,385 in connection with those transactions. *Id.*

In his plea agreement, defendant further acknowledged that, beyond the transactions described above, he and Spencer met "in the early 2000s and that, in addition to heroin, [defendant] also sold quantifies [*sic*] of marijuana, cocaine base, and fentanyl to Spencer during the course of their relationship." App. 18.

### *Indictment and Plea*

On June 24, 2020, defendant was charged by indictment with eight counts. App. 1-12. Count One charged defendant, Fountain, and Spencer with conspiring to distribute 100 grams or more of heroin between August 6, 2018 and September 3, 2019, in violation of 21 U.S.C. § 846. App. 1-2. Counts Two and Four through Nine charged defendant with distributing heroin on specific dates in that same range, in violation of 21 U.S.C. § 841(a)(1). App. 3, 5-10.

And Count Three charged defendant with money laundering, in violation of 18 U.S.C. § 1956(a)(3)(A). App. 4. Fountain and Spencer also were charged in certain of the distribution counts. App. 3, 7, 10.

On January 19, 2023, defendant pled guilty to Count One (conspiracy to distribute heroin) and Count Three (money laundering) pursuant to a written plea agreement with the government. App. 13. The agreement's factual basis detailed his actions concerning those two crimes, as well as the other seven acts of heroin distribution for which he had been charged. App. 15-19. The agreement described his relationship with Spencer, including that defendant both sold narcotics to Spencer and, at times, directed Spencer to sell narcotics on defendant's behalf. App. 16-17. Pertinent to this appeal, defendant also agreed to the following:

> [Defendant] further acknowledges that, for the purpose of computing his sentence under the Sentencing Guidelines, the following conduct that he stipulates constitutes relevant conduct under Guideline § 1B1.3. Specifically, [defendant] acknowledges that he met Spencer in the early 2000s and that, in addition to heroin, [defendant] also sold quantifies [*sic*] of marijuana, cocaine base, and fentanyl to Spencer during the course of their relationship.

App. 18.

The plea agreement also set forth the government's position as to the appropriate Guidelines calculation. App. 20-26. In determining a base offense

level 32, pursuant to Guidelines § 2D1.1(c) and § 1B1.3, the government's position was the Converted Drug Weight was between 3,000 kilograms and 10,000 kilograms because "the amount of controlled substances involved in the offense of conviction and relevant conduct for which defendant is accountable, or which was reasonably foreseeable to the defendant, and relevant conduct is approximately 85 grams of cocaine base . . . 160 to 200 grams of fentanyl . . . 5.57 to 6.04 kilograms of heroin . . . and 12.71 kilograms of marijuana[.]" App. 21-23.

The government's position was defendant also qualified for a two-level enhancement, pursuant to Guideline § 3B1.1, because he was an organizer, leader, manager, or supervisor in the conspiracy. App. 22. And he received another two-level enhancement due to his money-laundering activities, pursuant to Guideline § 2S1.1(b)(2)(B). App. 23. The government reserved its right to contest that defendant had fully accepted responsibility for his conduct and made clear that, if not, his total offense level would be 36. App. 23.

Defendant reserved the right to object to the government's offense level calculations at sentencing but acknowledged that he was subject to a five-year mandatory minimum sentence. App. 25.

*Sentencing*

*Defendant's Narcotics Conspiracy*

Prior to sentencing, United States Probation filed a Presentence Investigation Report ("PSR"). R. 180. The PSR recited the factual basis set forth in the plea agreement and explained that the government's investigation into defendant centered around the Black P Stones street gang, of which defendant was a high-ranking member. PSR ¶¶ 10-12. The PSR highlighted that defendant's plea agreement "admit[ted] to relevant conduct, namely that he met Defendant Spencer in the early 2000s and, in addition to heroin, sold quantities of marijuana, cocaine base, and fentanyl to Defendant Spencer." *Id*. ¶ 12.

The PSR recited the specific quantities of narcotics included in the government's Guidelines calculations in the plea agreement, noting: "[t]hese quantities are reportedly disputed by Defendant Jones, but are derived from quantities admitted to by Defendant Spencer in his proffer and a plea agreement[.]" PSR ¶ 12.[2] The PSR flagged that defendant had submitted a

---

[2] On November 8, 2021, Spencer pled guilty to Counts One (conspiracy to distribute heroin) and Six (heroin distribution) of the indictment, pursuant to a cooperation agreement with the government. R. 118. Spencer's written plea agreement included a nine-page factual basis that detailed his relationship with defendant, which began in the early-to-mid 2000s, and recounted their lengthy history of trafficking narcotics together in Chicago's Austin neighborhood, especially in 2016, 2017, 2018, and 2019. *Id*. ¶ 6. Spencer's agreement explained that defendant "managed certain drug spots" for the Black P Stones street gang, and it admitted that Spencer's conspiracy with defendant included approximately 85 grams of cocaine base, 160 to 200 grams of

7

written Defendant's Version of the Offense, which "does not suggest alternative drug quantities, but does suggest Defendant Spencer is 'exaggerating' the defendant's conduct." *Id.* Based on Spencer's plea agreement, and the other documentary evidence submitted by the government, the PSR concurred with the drug quantities contemplated by the government in the plea agreement and agreed that a two-level leadership enhancement applied. *Id.* After a three-level reduction for acceptance of responsibility, therefore, the PSR calculated a total adjusted offense level of 31. *Id.* ¶¶ 22-31. When combined with a Criminal History Category IV, the PSR calculated an advisory Guidelines' range of 151 to 188 months' imprisonment. *Id.* ¶ 126.

Defendant's sentencing memorandum conceded that "he has been involved in selling illegal drugs" with his charged co-conspirators "besides what is charged in this indictment[.]" App. 38. He further acknowledged that "he and [his co-conspirators] distributed 174 grams of heroin and that he had other transactions with the co-defendants." App. 42. Defendant maintained, however, that his admitted prior dealings with Spencer were "not to the extent that Jarmar (*sic*) Spencer is alleging." App. 38. He further argued that, "[t]he amounts of drugs [included] as relevant conduct are overstated." App. 42; *see*

---

heroin/fentanyl, 5.45 to 5.89 kilograms of heroin, and 12.71 kilograms of marijuana— the same quantities set forth in the government's Guidelines calculation with respect to defendant. *Compare* R. 118 ¶ 6, *with* App. 21.

*also* App. 43 (Defendant "is not denying that he had other narcotics transactions" with Spencer but "[t]he amounts attributed [to defendant in the PSR] are overstated."). Defendant's memorandum did *not* argue that his narcotics trafficking conducted outside the period charged in the indictment (August 2018 to September 2019) should not be considered "relevant conduct."

Defendant's sentencing hearing began on July 19, 2023 and spanned two days. 7/19/23 Tr.; 7/20/23 Tr. The district court asked the parties if they had any objections to the PSR, and defendant raised several, only one of which is relevant to this appeal. Defense counsel stated that his client "agree[d] that he distributed 174 grams of heroin, as indicated in the indictment. And he also agrees he had other transactions with" his co-defendants. 7/19/23 Tr. at 7:20-22. Counsel continued, "he doesn't deny that he . . . had … other transactions. He just says that there are no records . . . of how much there was in the other transactions[.]" *Id*. at 7:23-8:2. Counsel further explained that his client, "is not trying to depreciate the seriousness of the offense. He's not trying to say he did not have anything to do with . . ." Spencer "and did not have any other drug transactions. He's just saying the amounts are overstated." *Id*. at 8:10-15.

At the sentencing hearing, the district court heard testimony from two witnesses—Spencer and an individual named Dante Dockett. Spencer testified that his drug dealings with defendant began in October 2016. 7/19/23 Tr. at 49:24-50:4. Spencer re-affirmed that the estimated drug weights involved in

9

his dealings with defendant from 2016 to 2020, to which he had already attested in his plea agreement, were accurate. *Id*. at 48:3-49:11. As detailed in the PSR, those amounts were:

| Narcotic | Estimated Weight |
|---|---|
| Heroin | 5.57 kilograms |
| Cocaine base "crack" | 85 grams |
| Fentanyl | 160 grams |
| Marijuana | 12 kilograms |

PSR ¶ 22.

Spencer then explained how he reached those estimates by recounting his history of dealing narcotics with defendant. Spencer testified that both he and defendant were members of the Black P Stones street gang. 7/19/23 Tr. at 35:10-11; 38:11-15. He said that, at first, defendant provided Spencer with marijuana to sell on the street on defendant's behalf. *Id*. at 52:9-21. Then, in May 2017, defendant began providing Spencer with heroin for distribution. *Id*. at 53:16-54:9. Defendant started with five grams at a time, then increased the quantity to keep up with Spencer's sales. *Id*. at 54:2-4, 54:20-25.

Spencer further testified that he took leave from his drug dealing with defendant from May 2018 to October 2018 because Spencer was impaled by a fence post while attempting to escape a kidnapping. 7/19/23 Tr. at 55:10-60:7.

In October 2018, after he recuperated, defendant contacted Spencer and provided him with 25 grams of heroin for distribution. *Id*. at 60:8-61:2; 61:9-62:8. Defendant and Spencer then continued their drug trafficking activities until 2020. *Id*. at 46:18-21; 53:12-15; 62:17-64:14, 65:9-13, 66:2-5.

Spencer explained the specific *modus operandi* of his narcotics trafficking operation with defendant, which remained consistent throughout their arrangement from 2016 to 2020. Spencer testified that defendant was in the high-ranking position of "General" in the Black P Stones. 7/19/23 Tr. at 39:6-11. He further testified that defendant, through his position in the Black P Stones, controlled certain street corners in the Austin neighborhood of Chicago and enjoyed the exclusive right to distribute narcotics on those corners. *Id*. at 53:4-15; 54:14-19; 62:17-64:14, 65:9-13, 66:2-5. Spencer explained that his role was to distribute narcotics sold to him by defendant, or in other instances provided to him by defendant, for distribution. *Id*. at 52:9-24; 53:18-22; 54:7-9. He testified that, during the 2016 to 2020 period, he would regularly call defendant when he needed more narcotics to distribute, and that he and defendant would meet in person so that defendant could provide Spencer with additional narcotics for distribution. *Id*. at 54:20-55:6.

Finally, Spencer testified regarding Fountain's role in the scheme, which included mixing defendant's heroin before Spencer bought and/or distributed it. 7/19/23 Tr. at 66:11-67:11, 68:1-69:21.

11

### *Defendant's Involvement in Drug-Related Violence*

In addition to drug trafficking activities, Spencer testified regarding a double murder committed by Dante Dockett in Chicago in December 2016, who killed the individuals after they stole drugs from defendant's close friend named "Mack." 7/19/23 Tr. at 70:12-25, 72:18-23, 75:6-20.[3] Spencer further testified than an individual known as "Main Main" was murdered in late 2016 and that, prior to the murder, Main Main had told Spencer that defendant and Main Main "weren't seeing eye to eye about something." *Id.* at 78:7-8; *see generally id.* at 75:23-78:16.

After Spencer testified, Dockett took the stand. Dockett testified that he entered the heroin business with defendant in late 2016 after meeting with defendant at the residence of a mutual associate known as "Big Don." 7/19/23 Tr. at 130:23- 131:25. Dockett testified that defendant provided him with 25

---

[3] On October 28, 2021, Dockett was indicted along with 12 other defendants for violating 18 USC 1962(d) (racketeering conspiracy). *See* No. 19 CR 641-9 (N.D. Ill.) at Dkt. 284. As detailed in the indictment, the indicted conspirators were members of the "Wicked Town Enterprise" street gang, which trafficked narcotics from the early 1990s to at least 2017. *Id.* The indictment also alleged that the conspirators, including Dockett, committed or ordered several murders and attempted murders in furtherance of the conspiracy. *Id.* On May 25, 2022, Dockett entered a cooperation plea agreement and pled guilty to the sole count of the indictment pertaining to him. *Id.* at Dkt. 474; Dkt. 475. The factual basis for Dockett's plea was extensive and included his admission to his participation in narcotics trafficking and several murders and attempted murders. Dkt. 475 at 4-16. The factual basis in the plea agreement included the murders to which Dockett testified at defendant's sentencing, as well as defendant's role in those murders. *Id.* at 9, 13-16 (identifying defendant as "Individual LJ").

grams of heroin or more at a time for distribution. *Id*. at 132:22-133:15. Dockett admitted that, in October 2016, he killed three people at Big Don's behest because Big Don believed they had robbed him. *Id*. at 137:5-139:9.

Dockett further testified that, in November 2016, he again met with defendant at Big Don's residence. 7/19/23 Tr. at 140:20-141:22. This time defendant was accompanied by Mack, who showed Dockett pictures of an individual (known as "Boog") who Mack suspected had stolen drugs from him. *Id*. at 141:23-142:6. Big Don asked Dockett to retrieve as much of the stolen drugs as possible. *Id*. at 143:6-10. When Boog refused to return any drugs, Dockett obtained Boog's whereabouts from an individual known as "Day Day" and went to that location to confront Boog. *Id*. at 144:6-20, 145:7-24. Dockett explained that he killed Boog and Boog's cousin during the confrontation. 146:7-13.

According to Dockett, after the double murder, Day Day told Dockett that there was "supposed to been money on [Boog and Boog's cousin's] heads from [defendant] and Mack" and asked for the money for having given Dockett Boog's location. 7/19/23 Tr. at 146:14-147:2. Dockett then contacted defendant about the purported bounty, and defendant "[g]ave [Dockett] a thousand dollars and told [him] to give it to" Day Day. *Id*. at 147:3-14.

Finally, Dockett testified that defendant was involved in Dockett's murder of an individual known as "Main" in February 2017. 7/19/23 Tr. at

147:19-147:24. Specifically, defendant called Dockett on the day of the murder and asked him to "ride with" an associate of defendant named "Breezy." *Id*. at 148:7-23. Dockett initially thought he and Breezy were "going to make a drug deal" but when Breezy arrived, Dockett learned that they were going to confront an individual known as "Main" instead. *Id*. at 150:10-14, 151:7-17. Their subsequent confrontation led to a shootout with Main. *Id*. at 152:12-155:12. Breezy and Dockett then went to Dockett's house, where they called defendant to report what had happened. *Id*. at 155:22-156:8. Defendant instructed Dockett to follow Breezy home to make sure he was not apprehended by law enforcement. *Id*. at 156:9-157:1. Defendant came to Dockett's house the next day to pick up the firearms that were used in the shooting and, as Docket described, the two of them were "laughing" because they "[t]hought Main got away"; however, they later learned from a newspaper that Main was killed as a result of the gunfight. *Id*. at 159:10-160:10.

### *Parties' Arguments and Sentence*

The district court heard oral argument from the parties regarding the quantity of narcotics attributable to defendant for Guidelines purposes and the significance of the witness testimony more generally. *See generally* 7/20/23 Tr. at 194:4-202:19. The government noted that Spencer provided "detailed information about drug trafficking activities that he had with [defendant] starting in approximately 2016." *Id*. at 194:5-7. The government pointed out

14

that Spencer and defendant were "at first dealing in marijuana" beginning at "5 ounces at a time on consignment, and then once he showed that he [Spencer] could sell those drugs on a consistent basis, [defendant] moved it up to a pound." *Id*. at 194:10-14. The same pattern adhered with respect to their heroin dealings, which Spencer "purchased from [defendant], again starting off in smaller quantities and eventually working its way up to approximately 25 to 50 grams of heroin per transaction, again dealing with those narcotics on a consignment basis for a period of time." *Id.* at 194:15-20.

The government then argued that, "based on the testimony from Jamar Spencer yesterday that we're at about 5 kilograms of heroin" which by itself results in "the base offense level of 32." 7/20/23 Tr. at 197:6-8; *compare* 7/19/23 Tr. at 46:7-8; 48:15-20 (Spencer testimony that he and defendant distributed approximately five kilograms of heroin from 2016 to 2020) *with* Guideline § 2D1.1(e)(4) (setting offense level of 32 for distribution of greater than 3 kilograms but less than 10 kilograms of heroin). The government continued that, "the total drug quantity involved in this case that we're attributing to [defendant] is actually undercounted" because the government did not "include the drug trafficking activities with Dante Dockett" in its drug weight calculation. *Id*. at 197:22-198:2.

Just as he had in his sentencing memorandum, defendant challenged the sufficiency of the government's proof regarding the total narcotics involved in

defendant's conspiracy; but he made no argument concerning the temporal relationship between defendant's drug trafficking activities in 2016 and 2017 as compared to his activities charged in the indictment in 2018 and 2019. Specifically, defense counsel questioned the memory of the government's witnesses (7/20/23 Tr. at 199:15, 200:1-5); emphasized the lack of documentary or other corroborating evidence for the drug quantities claimed by Spencer (*id*. at 199:19, 199:9-10); and ultimately contended that the calculations set forth by the government and in the PSR were too speculative to be used in calculating defendant's offense level (*id*. at 200:14-201:11).

The district court found Spencer's testimony credible, noting that Spencer was corroborated by both Dockett's testimony about his own drug dealings with defendant and defendant's own plea agreement. App. 63:20-64:18; App. 65:2-3. The district court emphasized that the drug quantities submitted by the government and PSR had "the corroboration of those two individuals, who I found to be credible and not really touched on by cross examination." App. 64:19-21. In fact, the district court found that the drug quantity was "appropriate" and, if anything, "under-represented" because:

> based upon the ongoing interaction that [Spencer and Dockett] had with the defendant. Probably, if we dug into it more, it would go even higher. But certainly it is supported by the testimony and by the plea agreement and even by the defendant's own admission that there were other amounts.

16

App: 64:21-65:3. The district court noted that Spencer's "testimony alone I think gives you the 32 with the heroin" and that his testimony was further supported by Dockett's. App. 64:7-8; App. 65:3-4.

As for the murders, the discussion of that topic was limited to the court's application of the factors under 18 U.S.C. § 3553(a), not its calculation of the Guidelines. In its presentation at the sentencing hearing, the government made clear that, defendant "is not charged in this case with the deaths of" the victims in those murders, but rather "what these deaths highlight are the dangers associated with the profession that [defendant] engaged in." 7/20/23 Tr. at 219:22-25. The government further clarified the purpose of the evidence of his involvement in the murders: "it reveals who [defendant] is by who [he] associates himself with," which the court should consider as part of the "history and characteristics of the defendant." *Id.* at 222:9-11, 225:4-5; *see also id.* at 224:13-14.

In response, defense counsel argued, among other things, that the court should not consider Dockett's testimony that defendant participated in violent acts because defendant was not charged with any violent offense. *See* 7/20/23 Tr. at 228:1-229:4. The government rebutted this argument as follows:

> I do want to discuss one topic that [defendant's counsel] brought up. It's your Honor's ability to consider these acts of violence. The government is not asking your honor to find [defendant] guilty of ordering the murder of [Main]. Here's what we're

17

doing. There's a guidelines range, in this case, 151 months to 188 months. So when your Honor is determining where -- whether to sentence [defendant] within that guideline range and where to place him, your Honor can consider his characteristics, things that distinguish him from other individuals who might be within that same guidelines range. And so one of the pieces of information that your Honor can take into consideration is whether there's any violence associated with [defendant's] drug trafficking activities. And in this case, we've presented evidence through testimony that there was, in fact, violence that was perpetrated within this drug trafficking organization. That's what distinguishes [defendant] from someone else who is maybe in the same range and should get a 151-month sentence or someone who is the same range and should get a below-guideline sentence. As your Honor knows, it's a sliding scale. And based on the conduct both that has been charged in this case and based on the testimony that we heard about [defendant's] history and characteristics, that sliding scale pushes [defendant] toward the top end of the guideline range, so it's appropriate for your Honor to consider it. Again, we are not asking for a finding of guilt based on that offense, based on that conduct, but what we're saying is that's what sets [defendant] apart, not only from his co-conspirators, but from others who engage in similar activities.

7/20/23 Tr. at 238:16-239:21.

When calculating defendant's guidelines, the district court granted defendant a three-level reduction of responsibility over the government's objection that he should not be entitled to such a reduction because he had not taken responsibility for: (1) the murders that resulted from his drug trafficking

activities; and (2) the full volume of narcotics for which the government offered evidence. App. 67:10-24. More specifically, the district court held:

> it would be improper for me to suggest that he's required to admit to the relevant conduct that the[] [government] put on the stand today, although I do think he's close in his minimization of that conduct. I'm going to give him the acceptance of responsibility points for pleading guilty to what was charged …

App. 67:15-20. The district court therefore adopted the Guidelines calculation set forth by the PSR—which adopted the government's drug weight calculations and gave defendant credit for acceptance of responsibility—and found that a 151-to-188-month Guidelines range applied. App. 65:5; 7/20/23 Tr. at 210:4-5; 217:1-5.

After determining the Guidelines range, the district court addressed the factors under 18 U.S.C. 3553(a). In its discussion of defendant's history and characteristics and the need for deterrence, the district court addressed the witnesses' testimony concerning the murders with which defendant was involved. The court stated, "[n]o one is holding you responsible" for those murders and other violence but that they were "serious, serious violations of the law that were done to benefit" defendant and to "enable [defendant] to continue on with" his drug dealing. App. 71:2-11. The court continued:

> I have two individuals testifying under oath that there were these violent acts that were at your direction, minimizing that you don't have any violence involved in your crime when there's even an undercover

> potential transfer of a weapon that were going to
> provide for the undercover.[4] That minimization shows
> that you need specific deterrence and that you may
> commit crimes in the future because you haven't quite
> accepted the full level of the conduct that you've
> engaged in as a young man.

App. 71:25-72:9.

The district court then discussed the other Section 3553(a) factors and

their application to defendant before reaching the conclusion that a Guideline

sentence of 188 months' imprisonment was needed to serve those statutory

aims. *See generally* App. 68-73. The court also imposed a four-year supervised

release term and a $200 special assessment. App. 73:4-9.

## SUMMARY OF ARGUMENT

Defendant waived any challenge to the district court's consideration of

his narcotics trafficking with Jamar Spencer as "relevant conduct" under

Guideline §1B1.3 by knowingly and intentionally relinquishing that claim. In

his plea agreement, defendant admitted that he met Spencer in the early

2000s, began trafficking narcotics with Spencer long before the time period

alleged in the indictment (August 2018 through September 2019), and that

those earlier activities constituted relevant conduct for purposes of calculating

his Guidelines. With respect to his dealings with Spencer, the only argument

---

[4] The district court's mention of the "potential transfer of a weapon that were going to provide for the undercover" was a reference to defendant's attempted sale of a firearm to a law enforcement confidential source. *See* PSR ¶ 14.

defendant raised at sentencing was that the government had failed to sufficiently prove the quantity of narcotics they trafficked together. Defendant did not argue—as he now does on appeal, in contravention of his plea agreement—that the narcotics he trafficked before August 2018 were too temporally distant from the crime to which he pled to constitute the same plan, scheme, or course of conduct. As defense counsel explained at the sentencing hearing, defendant deliberately chose not to challenge the court's consideration of that uncharged conduct because he did not want to risk his acceptance of responsibility credit. Accordingly, defendant intentionally waived any argument on appeal that his dealings were with Spencer were not relevant conduct.

Waiver aside, the district court correctly considered defendant's dealings with Spencer from as early as 2016 as relevant conduct, and the court made no clear error in finding Spencer's testimony credible. Both in his plea agreement and live at defendant's sentencing hearing, Spencer testified that he distributed narcotics with defendant from 2016 and until 2020, with only a brief interruption in 2018 when Spencer was badly injured and physically unable to do so. Moreover, Spencer's testimony made clear that his and defendant's drug trafficking activities occurred in the same general location, (Chicago's Austin neighborhood), were done in furtherance of the same street gang (the Black P Stones, of which defendant was a leader), and generally

followed the same *modus operandi*. His testimony regarding the quantities they trafficked was detailed, corroborated by another witness who testified at sentencing (Dockett), and tracked defendant's own admissions in his plea agreement. As the court found, if anything, the narcotics quantities submitted by the government, and adopted by the PSR, "underrepresented" the total narcotics defendant trafficked during his prolific career. The court was correct to deem all of defendant's activities during the four-year period at issue to be relevant conduct for purposes of calculating defendant's Guidelines range, and its factual findings were not clearly erroneous.

Relatedly, defendant's challenge to the district court's credibility determinations fails. The court's credibility findings are entitled to substantial deference, and defendant has not identified any basis for disturbing them beyond his own bare aspersions of the government's witnesses.

Finally, there was no error with respect to the murders that witnesses Spencer and Dockett described defendant as having a role in at his sentencing hearing. Pursuant to 18 U.S.C. § 3661, there is no limitation at sentencing on the information the district court may consider concerning defendant's background, history, and character. And 18 U.S.C. § 3553(a) explicitly tasks the court to consider defendant's history and characteristics in fashioning an appropriate sentence, which is precisely the vein in which the murders were presented by the government and considered by the district court.

# ARGUMENT

**I.    The District Court Correctly Considered Defendant's Entire Scheme To Distribute Narcotics With His Co-Conspirator As Relevant Conduct, An Issue Defendant Waived By Expressly Agreeing To It In His Plea Agreement and Not Contesting It At Sentencing.**

## A.    Standard of Review

If properly preserved, this Court reviews the district court's application and computation of a defendant's sentencing Guidelines for procedural error *de novo*. *See United States v. Wallace*, 991 F.3d 810, 814 (7th Cir. 2021). It reviews a district court's factual determinations underlying the application of the Guidelines, such as a finding that defendant distributed a certain volume of narcotics, for clear error. *United States v. Harper*, 766 F.3d 741, 744 (7th Cir. 2014). Clear error is a "deferential standard" in which the district court "needs to adopt only a permissible view of the evidence." *United States v. Lard*, 327 F.3d 551, 554 (7th Cir. 2003) (citing *United States v. O'Brien*, 238 F.3d 822, 825 (7th Cir. 2001)). Under this standard, reversal is warranted only if "after reviewing the entire record, [the court is] left with the firm and definite conviction that a mistake has been made." *United States v. Ranjel*, 872 F.3d 815, 818 (7th Cir. 2017) (quotation omitted).

A defendant waives any challenge to the district court's calculation of his Guidelines when he agrees with that calculation at sentencing or strategically does not object to it. *United States v. Fuentes*, 858 F.3d 1119, 1120-21 (7th Cir.

2017); *United States v. Allen*, 529 F.3d 390, 395 (7th Cir. 2008). Waiver "extinguishes any error and precludes appellate review." *Fuentes*, 858 F.3d at 1121 (quotation omitted). But when a defendant negligently, rather than intentionally, fails to assert a Guidelines argument at sentencing, the argument is merely forfeited and reviewed on appeal for plain error. *Id.* at 1120.

**B.    Analysis**

On appeal, defendant contends that the district court erred when it calculated the volume of narcotics for which he was responsible by including dealings between Spencer and defendant that, according to defendant, "lack … temporal proximity" to the drug deals between Spencer and defendant charged in the indictment. Br. 40-43. The district court made no such error, and defendant waived any argument to the contrary.

**1.    Defendant Waived Any Argument That His Dealings With Spencer in 2016 and 2017 Were Not Relevant Conduct.**

Defendant waived his temporal proximity argument when he made an intentional and strategic decision not to challenge the inclusion of his pre-2018 narcotics activity with Spencer as relevant conduct.

"To resolve whether a defendant has waived or forfeited an argument, [the Court of Appeals] must determine whether he chose, as a matter of strategy, not to present the argument." *United States v. Hathaway*, 882 F.3d

24

638, 641 (7th Cir. 2018) (cleaned up) (a decision to assert some sentencing objections and not others was 'the paragon of intentional relinquishment.'") (quoting *United States v. Brodie*, 507 F.3d 527, 531 (7th Cir. 2007)); *see also United States v. Watkins*, 197 F. App'x 497, 499 (7th Cir. 2006) (defendant waived argument that certain uncharged drug transactions were not relevant conduct); *United States v. Salem*, 597 F.3d 877, 890 (7th Cir. 2010) (defendant who strategically does not object at sentencing to avoid jeopardizing acceptance-of-responsibility credit waives the issue). That is precisely what defendant did in this case when he intentionally chose to challenge Spencer's volume estimates, but elected not to challenge—and, in fact, agreed—that his uncharged dealings with Spencer constituted relevant conduct, so as not to jeopardize receiving credit for acceptance of responsibility.

The indictment charged, among other things, a narcotics trafficking conspiracy between Spencer and defendant ranging from August 2018 and September 2019. App. 1-12. But in advance of sentencing, defendant signed a plea agreement stating that defendant:

> acknowledges that, for the purpose of computing his sentence under the Sentencing Guidelines, the following conduct that he stipulates constitutes relevant conduct under Guideline § 1B1.3. Specifically, [defendant] acknowledges that he met Spencer in the early 2000s and that, in addition to heroin, [defendant] also sold quantifies [*sic*] of marijuana, cocaine base, and fentanyl to Spencer during the course of their relationship.

25

App. 18. The PSR highlighted that admission. PSR ¶ 12. And the PSR explicitly stated that its calculation of the volume of narcotics involved in Spencer and defendant's joint narcotics trafficking was premised on "quantities admitted by [defendant] in his proffer and plea agreement" and concerned amounts the two transacted "between 2016 and 2020." *Id.*

Adhering to the terms of his written agreement, and consistent with the PSR's representation of defendant's position, defendant did not object in his sentencing memorandum to the district court's consideration of his entire scheme with Spencer—including charged and uncharged drug deals—as relevant conduct. Instead, defendant objected only that the volume of narcotics involved in those transactions was "not to the extent that Jarmar [*sic*] Spencer is alleging." App. 38; *see also* App. 42 ("The amounts of drugs [included] as relevant conduct are overstated."); App. 43 (Defendant "is not denying that he had other narcotics transactions" with Spencer but "[t]he amounts attributed [to defendant in the plea agreement] are overstated."). Such objection was within defendant's reserved rights: while he acknowledged in his plea agreement that his pre-August 2018 narcotics trafficking with Spencer constituted relevant conduct, he disputed the government's calculation of the total volume they transacted. *See* App. 18.

Defendant charted the same course at the sentencing hearing, where his counsel made clear that his objection was only to those figures, and thus not to the temporal relationship between the charged conduct and his narcotics trafficking before August 2018. *See* 7/19/23 Tr. at 8:14-15 ("He's just saying that the amounts are overstated."). The district court therefore accepted— without any opposition—the PSR's finding that defendant engaged in uncharged, relevant conduct that included narcotics transactions with Spencer outside of the conspiracy period. *Id.* at 11:1-2; *see* Fed. R. Crim. P. 32(i)(3)(A); *United States v. Burgess*, 22 F.4th 680, 686 (7th Cir. 2022) (when "a defendant does not object to [an] enhancement at the time of sentencing, the district court need not make independent findings on the record and may, instead, adopt the findings of the PSR") (quotations omitted); *United States v. Moreno-Padilla*, 602 F.3d 802, 809 (7th Cir. 2010) (when the district court seeks to rely on the PSR, defendant bears the burden of "show[ing] the trial judge that the facts contained in the PSR are inaccurate.").

Critically, at the sentencing hearing, defense counsel revealed the strategic reason why defendant chose to object only to Spencer's volume estimates and *not* to the relevance of defendant's entire scheme with Spencer. Counsel explained that his objection was limited only to the calculation of volume because defendant "is not trying to depreciate the seriousness of the offense." 7/19/23 Tr. at 8:10-11. More fully, counsel stated:

> He agrees that they distributed 174 grams of heroin, as indicated in the indictment. And he also agrees that he had other transactions with these individuals. Now, he doesn't deny that he … had [] other transactions. He just says there are no records … [Defendant] is not trying to depreciate the seriousness of the offense. He's not trying to say he did not have anything to do with … this other person and did not have any other drug transactions. He's just saying that the amounts are overstated … he accepts that he did that, not denying it, but just that those amounts are overstated and there are no records, and that we submit that we shouldn't guess … if there's some sort of issue as to the amounts, well, then, we go with what we know.

*Id*. at 7:20-8:20. In other words, defendant's goal was to put the government to its burden without denying the full extent of his narcotics trafficking, thereby maximizing his chances regarding the only other issue contested at sentencing: acceptance of responsibility. *See* U.S.S.G. § 3E1.1 n.1 ("A defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility").

Defendant's strategy proved effective: the district court awarded defendant three acceptance-of-responsibility points over the government's objection. App. 67:15-20. But that strategic choice also effected a waiver of the argument defendant now tries to martial for the first time on appeal. This court has held time and again that a defendant who strategically does not object at sentencing to avoid jeopardizing acceptance of responsibility credit waives the issue. *See Hathaway*, 882 F.3d at 641 ("This record indicates that Hathaway

made a strategic decision to assert one restitution-related argument and to forgo others … Hathaway cannot now assert the arguments he previously disclaimed."); *Allen*, 529 F.3d at 395 ("If a specific objection was not raised at sentencing, we will view it as having been waived if the defendant had a strategic reason to forego the argument . . . "); *Watkins*, 197 F. App'x at 499 (defendant waived argument that certain uncharged drug transactions were not relevant conduct; "[o]nce a defendant makes a strategic decision to pursue one argument over another at sentencing, 'he also waives those arguments he decided not to present.'") (quoting *United States v. Jaimes-Jaimes*, 406 F.3d 845, 848 (7th Cir. 2005)); *United States v. Thomas*, No. 22-1377, 2023 WL 5447273, at *3 (7th Cir. Aug. 24, 2023), *cert. denied*, 144 S. Ct. 1382, 218 L. Ed. 2d 450 (2024) ("We agree with the government that Thomas had obvious strategic reasons not to argue that the murder conviction was relevant conduct to his drug conviction.").

Naturally, such waiver may occur by way of a plea agreement. For example, in *United States v. Collins*, defendant's plea agreement stated that he agreed that "the Court, when computing the advisory guidelines, should find that the defendant's total relevant conduct involved at least 50 grams but less than 200 grams of methamphetamine." 230 F. App'x 578, 580 (7th Cir. 2007). On appeal, the defendant argued that the district court should not have considered as relevant conduct 138.13 grams of methamphetamine because

29

that was "considerably more than he was convicted of distributing." *Id.* This Court held that argument was waived because the defendant "admitted in his plea agreement that he should be held responsible for at least 50 but less than 200 grams of methamphetamine." *Id.*

So too here. Defendant reserved the right to challenge the specific weight of the narcotics included as relevant conduct, but he specifically relinquished the ability to argue his pre-August 2018 narcotics trafficking with Spencer did not constitute "relevant conduct under Guideline § 1B1.3 … for the purpose of computing his sentence under the Sentencing Guidelines[.]" App. 18. That intentional, explicit, and strategic choice amounts to waiver and precludes appellate review. *See United States v. Robinson*, 964 F.3d 632, 639 (7th Cir. 2020) ("admission resolves all important matters against a defendant and removes all contest from the case") (cleaned up).

### 2. Defendant's Entire Scheme To Distribute Narcotics With Spencer Was Relevant Conduct.

Even if defendant had not expressly waived his claim on appeal, he forfeited it by failing to raise it in the district court. *Fuentes*, 858 F.3d at 1121. His temporal proximity argument is thus reviewed, if at all, for plain error. *Id.*

There was no plain error in this case. Defendant claims on appeal that "[m]ost" of the volume the district court attributed to defendant was "based on events that preceded the indictment by anywhere from *several months* to *two*

*years*."[5] Br. 39 (emphasis in original). Because of this, defendant says "temporal proximity is clearly absent" between the charged dealings and those included as relevant conduct. *Id*. at 40.

Defendant's "temporal proximity" argument is a red herring, which misunderstands the relevant conduct rules. Those rules specify that, in calculating a defendant's Guidelines, district courts should include all acts defendant committed, counseled, commanded, or procured and—in the case of a conspiracy—all acts within the scope of jointly undertaken criminal activity that were in furtherance of it and reasonably foreseeable to defendant. Guideline § 1B1.3(a)(1)(A) and (B). And, especially pertinent here, in cases where grouping would occur under Guideline § 3D1.2(d) (like narcotics conspiracy and distribution), all acts "that were part of the same course of

---

[5] It is doubtful that "most" of the volume included the drug weight calculation was based on events outside of the charged conspiracy period. Spencer testified that, from 2016 to 2020, defendant provided him with 100 to 125 grams of fentanyl-laced heroin, 5.45 to 5.89 kilograms of heroin, 12.71 kilograms of marijuana, and 85 grams of cocaine base. *See* 7/19/23 Tr. at 48:3-49:11. He noted that some marijuana deals occurred outside the timeframe of the charged conspiracy. *Id*. at 52:3-53:20 (describing marijuana deals from October 2016 to May 2017). And some of the heroin transactions occurred outside that period a well. *See id*. at 53:18-22 (defendant started providing heroin to Spencer in May 2017). But Spencer testified that the heroin transactions started out small (5 grams at a time) and then increased in volume over time (up to 25 grams). *Id*. at 54:20-25. Because defendant did not raise any objection to considering drug deals as early as 2016 and 2017 at sentencing, the witness was never asked to specify how much of the narcotics that he and defendant trafficked occurred before versus after August 2018. And defendant refused to take a position as to the proper drug quantity, so it remains unclear how much of Spencer's estimates defendant believes was improperly included. *See* PSR ¶ 12 ("defendant's version does not suggest alternative drug quantities").

conduct *or* common scheme or plan as the offense of conviction" likewise should be included. U.S.S.G. § 1B1.3(a)(2) (emphasis added). As this Court has explained:

> While these two formulations sound similar, they actually capture two distinct concepts. Offenses are part of a common scheme or plan if they are connected by at least one common factor, such as 'common victims, common accomplices, common purpose, or similar modus operandi.' Offenses are part of the same course of conduct if they are 'part of a single episode, spree, or ongoing series of offenses.' Courts assessing whether offenses are part of a course of conduct focus on whether the offenses were similar, regular, and close in time.

*United States v. Zehm*, 217 F.3d 506, 511 (7th Cir. 2000) (internal citations omitted) (quoting U.S.S.G. § 1B1.3(a)(2)).

Here, defendant's narcotics trafficking activities with Spencer in 2016 and 2017—the period defendant challenges—satisfy both tests. They are part of the "same course of conduct" because—as Spencer testified extensively regarding (and defendant's plea agreement concedes)—they dealt drugs regularly, and in substantially the same manner, from 2016 through 2020. 7/19/23 Tr. at 46:7-50:4. And, certainly, their jointly undertaken activity fits the definition of a "common scheme or plan," where "two or more offenses to constitute part of a common scheme or plan, they must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar *modus operandi*." *United*

32

*States v. Draheim*, 958 F.3d 651, 659 (7th Cir. 2020) (quoting U.S.S.G. § 1B1.3 cmt. n.5 (B)(i)). Crucially, "under the 'common scheme or plan' provision of the guidelines—as opposed to the 'same course of conduct' provision—temporal proximity and regularity are not required." *United States v. Frias*, 641 F. App'x 574, 577 (7th Cir. 2016) (quoting § 1B1.3(a)(2), cmt. n. 5(B)) (citing *United States v. Baines*, 777 F.3d 959, 963 (7th Cir. 2015), and *Zehm*, 217 F.3d at 511.

Defendant and Spencer's activities for the entire period of 2016 to 2020 bear all the hallmarks of a "common scheme." Spencer testified that he and defendant were members of the Black P Stones street gang, and that defendant—a high-ranking "General" in the gang—controlled certain street corners in the Austin neighborhood, where he enjoyed the exclusive right to distribute narcotics. 7/19/23 Tr. at 38:11-15; 39:12-15; 53:4-15; 54:14-19; 62:17-64:14, 65:9-13, 66:2-5. Spencer further explained that in October 2016, he and defendant agreed that Spencer would begin dealing drugs sold to him by defendant on defendant's corners, or, in some cases, sell drugs provided by defendant to customers at other locations on Chicago's west side. *Id.* at 50:1-4.48:3-49:11. He also testified that defendant regularly provided Spencer with drugs for distribution when Spencer would call and request them. *Id.* at 52:9-24; 53:18-22; 54:7-9. Finally, he testified that their activities occurred continuously from October 2016 through 2020, with only a brief interlude of five months in 2018 when Spencer was physically incapacitated. *Id.* at 55:10-

60:7. Put simply, their singular conspiracy began prior to period alleged in the indictment (August 2018 to September 2019) and their *modus operandi* remained unchanged throughout.

Because defendant engaged in a common scheme or plan, his "temporal proximity" argument misses the mark. To be sure, this Court has held that temporal proximity is an important factor to consider when assessing whether uncharged drug deals were part of the "same course of conduct" as the charged drug trafficking activities. *See United States v. Purham*, 754 F.3d 411 (7th Cir. 2014) (cited at Br. 42); *see also United States v. Ortiz*, 431 F.3d 1035, 1041 (7th Cir. 2005) ("without temporal proximity, the government needs a stronger showing regarding the other course of conduct factors, such as regularity or similarity of acts."). But such proximity is not required where, as here, the uncharged drug trafficking activities also were part of a *common scheme or plan. Frias*, 641 F. App'x at 577 (citing *Zehm*, 217 F.3d at 511) (comparing the "distinct concepts" of the "common scheme or plan" and "same course of conduct" formulations)).

Ignoring the distinction between "common scheme or plan" and "course of conduct," defendant places undue reliance on *United States v. Brasher*, 105 F.4th 1002 (7th Cir. 2024). *See* Br. 42. In *Brasher*, the court recognized that "temporal proximity [was] lacking" because there was a gap of approximately 14 months between the charged conduct (a conspiracy between defendant and

34

co-defendant Oaks) and the relevant conduct (earlier narcotics transactions defendant engaged in *without* Oaks, involving uncharged individuals named Jerry and Tammy Crontz). *Brasher*, 105 F.4th at 1007. But the court nevertheless explained that "lack of temporal proximity only gets Brasher so far" because "many cases establish that where 'the uncharged conduct involved the same principal, the same location, and the same drug' as the offense of conviction, those comparisons 'render it similar enough' to be relevant—even if 'the charged and uncharged offenses involved different participants and different amounts.'" *Id.* at 1007-08 (quoting *United States v. Singleton*, 548 F.3d 589, 592 (7th Cir. 2008)).

Applying this standard, this Court concluded that, although Brasher sold methamphetamine to different individuals in each deal, he sold the same drug (methamphetamine) in the same location ("a small area of Southern Illinois") in the same quantities (pounds) using the same process (fronting it to middlemen). *Brasher*, 105 F.4th at 1008. The Court therefore concluded that "the multitude of similarities here make up precisely the kind of 'similar modus operandi' the Guidelines hold out as the key to a finding of relevance." *Id.* (quoting U.S.S.G. § 1B1.3(a)(2) cmt. 5(B)(i)).

Like *Brasher*, defendant's narcotics activities—both before and during the charged conspiracy period—occurred in the same location, the west side of Chicago, primarily in the Austin neighborhood. 7/19/23 Tr. at 50:1-4.48:3-

49:11. And each transaction occurred the same way—defendant sold or fronted drugs to Spencer for Spencer to distribute on Chicago's west side, especially on corners controlled by defendant's and Spencer's shared street gang, the Black P Stones. *Id*. at 62:17-64:14, 65:9-13, 66:2-5; 66:11-67:11, 68:1-69:21. Moreover, while Brasher's offense and relevant conduct involved separate conspiracies— involving Oaks and the Crontzes, respectively—here, all of the conduct at issue involved the same co-defendant: Spencer. At bottom, there is more than sufficient evidence from which the district court could conclude that defendant's conduct outside the charged conspiracy period was, at the very least, part of the same scheme or plan as was the charged conduct.

Defendant's citation to *United States v. Purham*, 754 F.3d 411 (7th Cir. 2014), is similarly unavailing and, to the contrary, supports the district court's conclusion here. Purham was charged with transporting cocaine for the Black P Stones street gang in 2010. *Id*. at 414. The district court considered as relevant conduct cocaine deals that the defendant executed with two men, Moman and Miller, in 2008. *Id*. Between the 2008 and 2010 drug trafficking activities, defendant was incarcerated. *Id*. In assessing whether the 2008 cocaine deals were part of a "common scheme or plan" with the 2010 deals, this Court noted that, "the men with whom Purham worked to transport the [2008] cocaine, Robert Moman and Robert Miller, are not identified as Black P Stones. Neither were they involved in the charged conduct." *Id*. The court further

observed that "the PSR and the testimony at sentencing did not provide enough information to conclude that the two periods of cocaine running shared a modus operandi." *Id*. For these reasons, the court concluded that the 2008 and 2010 drug deals were not part of a "common scheme or plan" under the Guidelines. *Id*.

The record in this case is readily distinguishable from that in *Purham*. The charged and uncharged dealings in this case involved the same co-conspirator: Spencer. 7/19/23 Tr. at 50:1-4. And unlike in *Purham*, the record of Spencer and defendant's M.O. is fully developed and includes ample information about how the two operated, as described above. *Id*. at 62:17-64:14, 65:9-13, 66:2-5; 66:11-67:11, 68:1-69:21. Moreover, while Spencer testified that he took leave from his dealings with defendant for a period of a few months while he was physically incapacitated, he further testified that he and defendant picked right up where they left off, dealing the same types of drugs using the same *modus operandi* as they had since their conspiracy started in October 2016. *Id*. at 50:1-4.

At bottom, defendant and Spencer's activities outside of the charged conspiracy period were part of the exact same scheme as the charged conspiracy. No temporal gap existed between the two timeframes, but—even if it did—temporal proximity is not a prerequisite to relevant conduct in this context. The district court was right to include the narcotics trafficked during

37

defendant and Spencer's four-year conspiracy (from 2016 through 2020) as relevant conduct, and it certainly did not plainly err in doing so.

## II.   This Court Should Not Second-Guess The District Court's Credibility Determinations.

### A.     Standard of Review

Factual findings at sentencing must be made by a preponderance of the evidence. *United States v. Dennis*, 119 F4th 1103, 1109 (7th Cir. 2024). With that said, "the evidentiary standards at sentencing are more relaxed than at trial, and the district court is entitled to make credibility determinations about the witnesses and testimony presented." *United States v. Minhas*, 850 F.3d 873, 878 (7th Cir. 2017) (citation omitted); *see also United States v. Statham,* 581 F.3d 548, 553 (7th Cir. 2009) ("we require only that the information considered has sufficient indicia of reliability to support its probable accuracy."). Indeed, "[w]hen the district court has the benefit of hearing live testimony, [the Court of Appeals] generally accept[s] the court's credibility assessment unless 'it was 'physically impossible for the witness to observe that which he claims occurred, or impossible under the laws of nature for the occurrence to have taken place at all.'" *United States v. Grigsby*, 692 F.3d 778, n. 2 (7th Cir. 2012) (quoting *United States v. Speed*, 656 F.3d 714, 718 (7th Cir. 2011) (quoting *United States v. Johnson*, 437 F.3d 665, 675 (7th Cir. 2006))); *see also United States v. Lawrence*, 854 F.3d 462, 468 (8th Cir. 2017) ("It is well

established that in sentencing matters a district court's assessment of witness credibility is quintessentially a judgment call and virtually unassailable on appeal.") (cleaned up) (quotations omitted).

### B.    Analysis

Defendant protests "the government's reliance on dual informants and their plea agreements" and the district court's "embrace [of] the dual-informant paradigm" because it "flies in the face of [Seventh Circuit] jury instruction #3.05." Br. 38-39 (citing Seventh Circuit Pattern Jury Instruction Number 3.05 (cautioning jurors to consider cooperator testimony with "great care")). In other words, defendant challenges the district court's determination that the government's two witnesses testified credibly about defendant's drug dealing activities. *See* App. 64:19-20 (noting "the corroboration of those two individuals, who I found to be credible").

Defendant's grievances about the district court's credibility determinations fall far short of establishing error. "It is up to the trial judge to make the credibility determination." *United States v. Eddy*, 8 F.3d 577, 582 (7th Cir. 1993). This Court will not "second-guess the trial judge on matters of credibility unless the defendant establishes that the testimony was exceedingly improbable." *United States v. Nobles*, 69 F.3d 172, 181 (7th Cir. 1995) (quotations omitted). Where, as here, defendant "f[alls] back on bare criticism, baselessly attacking the credibility of his co-conspirators and their

assertions regarding his drug activities" it is "insufficient to tip the scales of the evidence in his favor." *United States v. Gonzalez-Rangel*, 63 F. App'x 909, 914 (7th Cir. 2003); *see also Grigsby*, 692 F.3d at n. 2; *Speed*, 656 F.3d at 718 (similar).

Defendant has not made any showing that the government's witnesses' testimony was "exceedingly improbable." As an initial matter, it is not true, as defendant contends, that the government's witnesses were only corroborated by each other. Br. 38-39. In reaching its sentence, the district court also highlighted that the witnesses' testimony was consistent with their own plea agreements and, separately, with defendant's admissions about his own drug trafficking activities. App. 65:1-3 (noting the drug quantity was "supported by the testimony and by the plea agreement and even by the defendant's own admission that there were other amounts.").

Even if there were no such corroboration, the district court was well-equipped—and well within its right—to weigh the credibility of the government's witnesses. Indeed, the district court noted that cooperator testimony must be evaluated with great caution, commenting that "you have to worry about [the witness's] motivation" before determining that the government's witnesses were credible. App. 64:14. And it is settled law that even uncorroborated accomplice testimony is sufficient to sustain a finding of guilt, so long as the testimony is not "incredible as a matter of law[,]" *United*

States v. Crowder, 36 F.3d 691, 696 (7th Cir. 1994), which—given defendant's own admissions—Dockett's and Spencer's testimony plainly was not.

In sum, where, as here, the defendant's grounds for appeal amount to nothing more than bare attacks on the credibility of his testifying co-conspirators, his sentence must stand. *Gonzalez-Rangel*, 63 F. App'x at 914.

## III. The District Court Committed No Procedural Error In Permitting Witness Testimony Regarding Murders That Defendant And His Drug Conspiracy Allegedly Caused.

### A. Standard of Review

This Court conducts a "*de novo* review as to whether a district court committed any procedural error." *United States v. Poulin*, 745 F.3d 796, 800 (7th Cir. 2014).

### B. Analysis

Defendant contends, without elaboration, that the district court "erred by including Dante Dockett's six (6) murders and attempt murders which took place in Kankakee and Chicago between 2015 and 2017." Br. 32. Defendant waived this argument by failing to develop it. *See United States v. Butler*, 58 F.4th 364, 368 (7th Cir. 2023). But, as a factual matter, he simply is wrong to suggest that the court included "Dockett's multiple acts of violence as part of defendant's 'relevant conduct.'" Br. 32. And, as a legal matter, the purpose for which the government presented, and the court considered, the murders was entirely appropriate.

At sentencing, the government explicitly asked the district court to consider Dockett's violence as part of its consideration of the § 3553(a) factors. 7/20/23 Tr. at 222:9-11, 224:13-14, 225:4-5, 238:16-239:21. That was proper, as 18 U.S.C. § 3661 makes plain that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." And while the court did not find defendant personally liable for the commission of those murders, it factored into its sentencing determination the reality that defendant's narcotics conspiracy was a but-for cause of those deaths. App. 71:2-72:9 ("Those are serious violations of the law that were done to benefit you, according to testimony, done to enable you to continue on with your [drug trafficking] work."). That was proper, as 18 U.S.C. § 3553(a)(1) tasks courts to consider "the nature and circumstances of the offenses," as well as "the history and characteristics of the defendant," in imposing its sentence. Accordingly, defendant's claim of error is without merit.

## CONCLUSION

For the foregoing reasons, the government respectfully requests defendant's sentence be affirmed.

Respectfully submitted.

MORRIS PASQUAL
United States Attorney

BRIAN J. KERWIN
Assistant United States Attorney
Chief of Appeals, Criminal Division

*/s/ Michael Maione*
MICHAEL MAIONE
Assistant United States Attorney

## RULE 32 CERTIFICATION

I hereby certify that:

1. This brief complies with the type volume limitation of Federal Rules of Appellate Procedure 32(a)(7)(B) because it contains 10,038 words.

2. This brief complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5), 32(a)(6), and Circuit Rule 32(b), because it has been prepared using the Microsoft Office Word proportionally-spaced typeface of Century Schoolbook with 13-point font in the text and 12-point font in the footnotes.

Respectfully submitted.

MORRIS PASQUAL
United States Attorney

By:       */s/ Michael Maione*
           MICHAEL MAIONE
           Assistant United States Attorney
           219 South Dearborn Street, 5th Floor
           Chicago, Illinois
           (312) 353-4258

## CERTIFICATE OF SERVICE

I hereby certify that on December 18, 2024, I electronically filed the foregoing Brief and Appendix of the United States with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Respectfully submitted.

By:            /s/ *Michael Maione*
MICHAEL MAIONE
Assistant United States Attorney
219 South Dearborn Street, 5th Floor
Chicago, Illinois
(312) 353-4258